# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MELINDA GALLEGOS,

      Plaintiff,

      vs.                                                                     No. CIV 99-0511 JC/RLP

LOS ALAMOS COUNTY FIRE DEPARTMENT
and the COUNTY OF LOS ALAMOS,
a New Mexico municipal entity,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment, filed May 10, 2000 *(Doc. 38)* ("Motion"). The Court has reviewed the Motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendants' Motion is well taken and will be granted.

**Factual Background**

Plaintiff Melinda Gallegos was employed with the Los Alamos County Fire Department ("Fire Department") as a firefighter and driver/engineer from 1987 to 1998. Beginning in 1995, Plaintiff and other firefighters were required to take a physical performance test known as the Criterion Task Test ("CTT"). Although Plaintiff felt the test was unsafe, she took and passed the test in 1995. The next year, Plaintiff refused to take the CTT and continued to express her concerns regarding the safety and validity of the test. Plaintiff was suspended for two days for her refusal to take the CTT. At approximately the same time, Plaintiff developed a neurological condition which

causes her eye to twitch and limits her peripheral vision. Dr. Hugh Smith, the Fire Department's medical review officer, placed Plaintiff on medical leave. In May 1996 and November 1996, Dr. Smith notified Fire Chief Douglas MacDonald that despite medical treatment, Plaintiff was not fit for duty and that he did not "anticipate her returning to work as a firefighter in the foreseeable future." *See* Letters from Dr. Smith, Exs. 3, 4 to Defs.' Mem. in Supp. of Mot. ("Memorandum"), filed May 10, 2000 *(Doc. 39)*. In October 1997, following the expiration of her medical leave, Plaintiff was notified of her proposed termination based on Dr. Smith's evaluation of her fitness for duty, and was terminated from her position with the Fire Department in February 1998. *See* Termination Notices, Exs. 6, 7 to Defs.' Mem.

**Discussion**

Defendants move for summary judgment on the following claims: 1) sex discrimination in violation of Title VII, 2) violation of the Americans with Disabilities Act, 3) violation of Plaintiff's free speech rights under the First Amendment to the United States Constitution, 4) violation of Plaintiff's liberty interest in her reputation under the Fourteenth Amendment to the United States Constitution, 5) violation of Plaintiff's procedural due process rights, and 6) violation of Plaintiff's substantive due process rights. Defendants also move for dismissal of Plaintiff's request for punitive damages.

I note that Plaintiff agrees to dismiss her Americans with Disabilities Act claim. *See* Pl.'s Mem. in Opp'n to Defs.' Mot. ("Response") at 1, filed May 10, 2000 *(Doc. 40)*. Further, Plaintiff's Response wholly fails to address Defendants' arguments for dismissal of her claim of violation of a liberty interest in her reputation, her claim related to procedural due process, and her request for punitive damages. In addition, none of these claims, nor any of Plaintiff's state law claims, are

included in the parties' Pretrial Order. *See* Pretrial Order at 3, III.A., filed May 18, 2000 *(Doc. 43)*. Consequently, these claims are deemed abandoned and will be dismissed with prejudice. Therefore, the only claims that the Court will consider in this Opinion are Plaintiff's claims that: 1) Defendants discriminated against her based on sex in violation of Title VII, 2) Defendants retaliated against Plaintiff for exercising her free speech rights under the First Amendment, and 3) Defendants violated Plaintiff's substantive due process rights.[1]

    A.    <u>Sex Discrimination in Violation of Title VII</u>

Defendants move for summary judgment on Plaintiff's sex discrimination claim on the basis that she fails to establish a *prima facie* case of discrimination as described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to establish a *prima facie* claim under this framework, Plaintiff must demonstrate that she is "qualified" for the relevant position. *See id.* at 802. Defendants contend that Plaintiff was not medically fit due to her vision problem and thus, she was not qualified for the position of firefighter/driver/engineer. Plaintiff entirely ignores Defendants' argument under the *McDonnell-Douglas* theory, asserting instead that she brings a disparate impact claim as articulated in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971).[2] Plaintiff essentially argues that the CTT has a disproportionate impact on women and that it is not a valid, job-related test. In their Reply, Defendants assert that Plaintiff also fails to establish a *prima facie* case under a disparate impact theory of sex discrimination.

---

[1] These are also the only claims that appear in the parties' Pretrial Order. *See* Pretrial Order at 3, Pt. III.A. and at 7, Pt. V.1.

[2] I note that by failing to respond to Defendants' argument and evidence presented under the *McDonnell-Douglas* disparate treatment framework, Plaintiff abandons that particular theory of relief under Title VII. *See also* D.N.M.LR-Civ. 7.5(b) (noting that failure to serve a response in opposition to any motion constitutes consent to grant the motion).

Plaintiff may establish a *prima facie* case of discrimination under a disparate impact theory "by showing that [the CTT] . . . caused a significant disparate impact on" women. *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1312 (10th Cir. 1999) (citations omitted). However, in doing so, Plaintiff may not merely point to circumstances that raise an inference of discriminatory impact; Plaintiff "must demonstrate the discriminatory impact at issue." *Id.*

Here, Plaintiff's only evidence that the CTT had a disparate impact on women is her assertion that the test "had the impact of removing the one and only female firefighter in the history of the Los Alamos Fire Department." Pl.'s Resp. at 9. However, Plaintiff does not demonstrate how her discharge resulted from the discriminatory impact of the test. Although Plaintiff claims that men rarely fail the CTT, she does not indicate what the failure rates are for men or women. Moreover, there is no evidence that Plaintiff ever failed the test. Plaintiff also points to the fact that she "was the only person terminated for refusing to take the test," without indicating whether any other firefighters also refused to take the test. At best, this evidence merely raises an inference of discriminatory impact. Defendants correctly note that Plaintiff's conclusory allegations are insufficient to survive summary judgment on this claim. *See Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994). Plaintiff fails to establish a *prima facie* case of disparate impact sex discrimination under Title VII. Accordingly, summary judgment will be granted on Plaintiff's Title VII claim.

  B. <u>Retaliation in Violation of the First Amendment</u>

Defendants move for summary judgment on Plaintiff's First Amendment claim on the grounds that Plaintiff's conduct did not constitute speech on a matter of public concern. Plaintiff contends that her complaints regarding safety issues of the CTT touch on matters of public concern and therefore are protected speech under the First Amendment.

In evaluating a public employee's First Amendment retaliation claims, the Court must first "determine whether the plaintiff's statements can be 'fairly characterized as constituting speech on a matter of public concern.'" *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996) (citing *Connick v. Myers*, 461 U.S. 138, 142-54 (1983)). "[T]he fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen." *Id.* Speech involving a public agency's discharge of its governmental duties will generally be considered as speech touching on matters of public concern, whereas "speech relating to internal personnel disputes and working conditions ordinarily will not." *Id.* In order to make this distinction, the Court "must consider the content, form, and context" of Plaintiff's statements, "as revealed by the whole record." *Id.* (internal quotations omitted). The Court will also consider Plaintiff's motive to determine whether her speech was intended to redress a personal grievance or to achieve a broader public purpose. *See id.* (citation omitted).

Plaintiff provides little indication of the specific safety concerns she expressed involving the CTT. However, the evidence indicates the following: 1) Plaintiff took the CTT in late 1995 and suffered a back injury; 2) Plaintiff complained that the CTT was unsafe and expressed her complaints to a safety officer, her captain, and the chief; 3) Plaintiff believed the test was unsafe because it did not accurately simulate actual firefighter duties and was "set up for somebody . . . that is taller." Gallegos dep. at 69, Ex. A to Pl.'s Resp.; 4) Plaintiff felt that, as a smaller person, she needed to use a heavier mallet than the one provided in the test, *see id.*; 5) Plaintiff believes that it is easier to move a human body than the "Rescue Randy" dummy used in the test, and that it is more difficult to move "Rescue Randy" because it is one of the last events in the test, *see id.* at 70-71; 6) Plaintiff was aware of safety complaints of other firefighters and did not raise them to administration, *see id.* at 79-80.

After reviewing and considering this evidence in light of the standards described above, I find that Plaintiff's speech does not touch on matters of public concern.[3]

Plaintiff relies solely on a Department of Energy ("DOE") investigatory report as proof that her speech touched on matters of public concern. *See* Investigation of the Fire Department Employee Safety and Health Concerns Regarding Physical Performance Requirements ("Report"), Ex. B to Pl.'s Resp.[4] The DOE Report addresses the concerns of Fire Department employees and their union regarding the appropriateness, safety and administration of the CTT as a test of physical performance. No evidence suggests that the investigation was initiated by or directly involved personnel outside the Fire Department. Thus, the report is apparently an internal investigation of conditions within the department, rather than an attempt to raise public awareness on an issue of general interest. Even assuming that the Report was evidence that the safety of the CTT involved a matter of public concern, the issue here is whether Plaintiff spoke out in her capacity as an employee or as an interested citizen. *See David*, 101 F.3d at 1355. In this case, I find that Plaintiff's speech reflected her personal concerns as an employee and not those of an interested member of the public.

Here, Plaintiff suffered an injury after taking the CTT in 1995. Thereafter, she refused to take the test and continued to voice her safety concerns to various individuals within the Fire Department.[5]

---

[3] It is impossible to determine whether Plaintiff's statements in numbers four and five represent concerns over the safety, difficulty, or validity of the test. Plaintiff testified that she was retaliated against only because of her speech regarding *safety* issues. *See* Gallegos dep. at 106-107, Ex. A to Pl.'s Resp.

[4] There is no evidence that Plaintiff initiated or participated in the investigation or report.

[5] Plaintiff testified that she also sent a letter to Congressman Bill Richardson, presumably regarding her concerns over the CTT. However, neither party provided the Court with any evidence of the specific contents of the letter. Thus, the Court is unable to evaluate the nature and meaning of this letter. Moreover, there is no evidence that anyone else in the Fire Department knew that Plaintiff wrote the letter, thus the letter could not be the cause of any retaliatory act taken against Plaintiff.

Plaintiff's concerns centered on those aspects of the test that she considered unsafe for her. In fact, she chose not to express the concerns of other firefighters, even when she was aware that they also had safety complaints regarding the test. She did not seek to expose official misconduct, wrongdoing, or malfeasance. Nor is there evidence that Plaintiff was concerned over whether the CTT threatened the ability of the Fire Department to deliver services to the public. After reviewing Plaintiff's speech in light of the whole record, I find that her complaints were intended to express personal concerns related to her conditions of employment and were not intended to achieve a broader public purpose. Because Plaintiff's speech did not touch on matters of public concern, Defendants' motion for summary judgment will be granted on Plaintiff's First Amendment claim.

### C. Substantive Due Process Rights

Defendants move for summary judgment on Plaintiff's substantive due process claim asserting that Plaintiff's termination was not arbitrary, capricious or irrational. Plaintiff contends that Defendants failed to consider her safety complaints, thereby leading to her suspension and termination, and that these actions shock the conscience. "There is some indication that the 'shocks the conscience' standard and the 'arbitrariness' standard are used interchangeably" in evaluating substantive due process claims. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 529 (10th Cir. 1998). I find that in this case, summary judgment is appropriate under either standard.

First, there is undisputed evidence that Plaintiff's concerns were considered and that her supervisors disagreed with her conclusions regarding the safety of the CTT. *See* Report, Ex. B to Pl.'s Resp.; Memorandum dated Nov. 7, 1995, Ex. F to Pl.'s Resp. In fact, Plaintiff provides no evidence that her supervisors refused to consider her safety complaints. Second, given the facts and circumstances before them, it was not unreasonable for Plaintiff's supervisors to reach a different

conclusion from that of Plaintiff. The fact that Plaintiff may find fault with her employer's ultimate conclusion regarding the safety of the CTT is insufficient to support a substantive due process claim. *See Tonkovich*, 159 F.3d at 529 (finding that a reasonable disagreement between Plaintiff and his employer regarding an employee conduct standard does not support a substantive due process claim). Finally, Defendants present evidence that Plaintiff was terminated based on Dr. Smith's opinion that Plaintiff's eye condition rendered her unable to safely perform the duties of her position. *See* Termination Notices, Exs. 6, 7 to Defs.' Mem. Plaintiff neither disagrees with the findings of Dr. Smith regarding her medical condition, nor provides any medical opinion to the contrary. *See* Gallegos dep. at 120-21, Ex. 2 to Defs.' Mem. I do not find a termination under these circumstances to be arbitrary, capricious, or irrational. Nor do I find Defendants' actions to be shocking to the conscience. Plaintiff fails to produce evidence that creates a genuine issue to the contrary, thus summary judgment will be granted on Plaintiff's substantive due process claim.

### D. Section 1983 Claims

Defendant moves for summary judgment on all of Plaintiff's § 1983 claims on the grounds that Plaintiff fails to allege or establish a direct causal link between a municipal policy or custom and the alleged deprivation of Plaintiff's constitutional rights. Plaintiff does not respond to this argument.

Plaintiff brings this suit against Defendants as "municipal entities of the State of New Mexico." Pl.'s Compl. ¶ 6, filed May 4, 1999 *(Doc. 1)*. Section 1983 does not impose liability on municipalities under a theory of vicarious liability. *See Thomas v. City of Snyder*, 103 F.3d 145 (unpublished table decision) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978)), *available at* 1996 WL 662453, at \*\*4 (10th Cir. Nov. 15, 1996). "A municipality can be held liable for a constitutional violation under 42 U.S.C. § 1983 only when action pursuant to official municipal

policy of some nature caused a constitutional tort." *Id.* (internal quotations and citation omitted). Accordingly, municipal liability may attach to the decision of "a municipal official who is responsible for establishing final policy with respect to the subject matter in question [and who] makes a deliberate choice to follow a course of action . . . from among various alternatives." *Id.* (internal quotations and citations omitted).

In this case, Plaintiff fails to allege or establish that any municipal custom or policy is responsible for Plaintiff's alleged deprivation of constitutional rights. Nor does Plaintiff allege or establish that the Fire Department, or any person within the department, has the necessary final policymaking authority in order to establish municipal liability. Consequently, I find that Plaintiff's lack of response to Defendants' argument on this issue establishes an alternative justification for granting summary judgment as to all of Plaintiff's claims under § 1983.

**Conclusion**

Defendants' Motion for Summary Judgment will be granted. Plaintiff's claims pursuant to the Americans with Disabilities Act, a liberty interest in Plaintiff's reputation, procedural due process, request for punitive damages, and all state law claims will be dismissed with prejudice. Summary judgment will be granted in favor of Defendants on Plaintiff's claims pursuant to Title VII, the First Amendment to the United States Constitution, and substantive due process.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment *(Doc. 38)* is **granted**.

IT IS ORDERED that Plaintiff's claims pursuant to the Americans with Disabilities Act, a liberty interest in Plaintiff's reputation, procedural due process, request for punitive damages, and all state law claims are **dismissed** with prejudice.

IT IS ORDERED that summary judgment is **granted** in favor of Defendants on Plaintiff's claims of sex discrimination under Title VII, retaliation in violation of the First Amendment to the United States Constitution, and violation of substantive due process.

DATED this 6th day of June, 2000.

                                                                     _____
                                                                     **CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

    Hannah B. Best
    Gail A. Heglund
    Hannah Best & Associates
    Albuquerque, New Mexico

Counsel for Defendants:

    Judith C. Herrera
    Herrera, Long, Pound & Komer, P.A.
    Santa Fe, New Mexico